United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RUDY ALEXANDER PAAU CHO, et al.,
Plaintiffs,

v.

SERGIO ALBARRAN, et al.,
Defendants.

Case No. 26-cv-12538-PCP

**ORDER GRANTING WRIT OF HABEAS CORPUS**

Re: Dkt. Nos. 1, 14, 21

On the morning of October 26, 2026, Rudy Alexander Paau Cho and Ricardo Simaj Rodriguez were pulled over while driving to work and then arrested and detained by U.S. Immigration and Customs Enforcement (ICE). Mr. Paau Cho and Mr. Simaj Rodriguez are both natives and citizens of Guatemala who have lived in the United States since they were children. At the time of their arrests, ICE did not have valid warrants for either of them. They jointly filed a petition for a writ of habeas corpus, alleging that their warrantless arrests were unlawful and that their ongoing detention violates their constitutional and statutory rights. Because the petitioners were arrested without being provided the procedural protections mandated by Congress and which are necessary to afford immigration arrestees a bare minimum of due process prior to any loss of their liberty, the Court grants their petition for a writ of habeas corpus.

## BACKGROUND

Mr. Paau Cho is a 22-year-old native and citizen of Guatemala. Exhibit 1, Petition for Writ of Habeas Corpus, Dkt. No. 1, at 2. He came to the United States in approximately 2017 or 2018 when he was a child, and he has resided here since that time. *Id.* He was detained by immigration authorities upon entry to the United States and then released. *Id.* He has never previously been arrested. *Id.*

Mr. Simaj Rodriguez is a 24-year-old native and citizen of Guatemala. Exhibit 2, Petition

for Writ of Habeas Corpus, Dkt. No. 1, at 2. He came to the United States approximately seven years ago when he was a child and had, until now, never encountered immigration authorities. *Id.* After arriving in the United States, he lived in Kentucky for approximately two years, then moved to California, where he has remained. *Id.* He was arrested and convicted of a DUI in December 2025, and he remains on probation. *Id.*

On the morning of October 26, 2026, Mr. Simaj Rodriguez was driving his coworkers, including Mr. Paau Cho, to Groland Landscape in Hayward, California, where they work. *Id.*; Exhibit 1, Petition for Writ of Habeas Corpus, Dkt. No. 1, at 2. Just before 7:00 AM, Mr. Simaj Rodriguez observed lights flashing behind him that he thought were police lights, so he pulled over. Exhibit 2, Petition for Writ of Habeas Corpus, Dkt. No. 1, at 2. Four plainclothes ICE agents approached and directed everyone to exit the vehicle. *Id.* The agents asked for identification. *Id.* Mr. Paau Cho and Mr. Simaj Rodriguez both gave the officers their Guatemalan identification. *Id.* *Id.*; Exhibit 1, Petition for Writ of Habeas Corpus, Dkt. No. 1, at 2. One of the ICE agents spoke Spanish and informed them that they were from immigration. Exhibit 2, Petition for Writ of Habeas Corpus, Dkt. No. 1, at 2. The agent told them that they stopped the vehicle because they were looking for a man from Colombia, then showed them a photograph. *Id.* Mr. Paau Cho and Mr. Simaj Rodriguez both told the ICE agent that they did not recognize the man in the photograph. *Id.*; Exhibit 1, Petition for Writ of Habeas Corpus, Dkt. No. 1, at 2.

After ICE agents looked up Mr. Paau Cho's information, they informed Mr. Paau Cho that he was subject to a final order of removal. Exhibit 1, Petition for Writ of Habeas Corpus, Dkt. No. 1, at 2. Mr. Paau Cho was, until then, unaware of the order. *Id.* ICE agents then informed Mr. Paau Cho and Mr. Simaj Rodriguez that they were detaining the two of them but not their other coworkers. *Id.*; Exhibit 2, Petition for Writ of Habeas Corpus, Dkt. No. 1, at 2. The officers did not ask Mr. Simaj Rodriguez about his immigration status until he arrived at 630 Sansome Street, an ICE field office located in San Francisco, California. Exhibit 2, Petition for Writ of Habeas Corpus, Dkt. No. 1, at 2. The ICE agents did not have an arrest warrant for Mr. Paau Cho or for Mr. Simaj Rodriguez. Exhibit 1, Petition for Writ of Habeas Corpus, Dkt. No. 1, at 2; Exhibit 2, Petition for Writ of Habeas Corpus, Dkt. No. 1, at 2. Once Mr. Paau Cho and Mr. Simaj Rodriguez

arrived at 630 Sansome, ICE agents prepared and showed Mr. Paau Cho and Mr. Simaj Rodriguez warrants for their arrest. Exhibit 1, Petition for Writ of Habeas Corpus, Dkt. No. 1, at 2; Exhibit 2, Petition for Writ of Habeas Corpus, Dkt. No. 1, at 2.

Counsel for Mr. Paau Cho and Mr. Simaj Rodriguez filed a habeas petition later that day and an *ex parte* motion for a temporary restraining order and order to show cause why a preliminary injunction should not issue on October 27, 2026. *See* Motion for Temporary Restraining Order, Dkt. No. 4. The Court ordered the government to file a response to petitioners' *ex parte* motion for a temporary restraining order by 5:00 PM that same day. *See* Dkt. No. 5. The Court then ordered petitioners to file a reply by 12:00 PM the following day and scheduled a hearing for 4:00 PM on October 28, 2026. *See* Dkt. No. 7. After hearing argument from the parties, the Court orally denied the *ex parte* motion for a temporary restraining order. *See* Dkt. No. 10. The Court ordered the government to provide 72 hours' notice of any impending action that could affect the Court's jurisdiction or ability to provide relief to petitioners. *Id.*

On November 9, 2026, Mr. Paau Cho filed a motion to reopen his removal proceedings in immigration court based on lack of notice. *See* Exhibit A, Traverse in Response to Order to Show Cause, Dkt. No. 21. On November 10, 2026, the government provided a status report with respect to Mr. Paau Cho. *See* Dkt. No. 19. The report informed the Court that Mr. Paau Cho is scheduled for removal from the United States on November 18, 2026. *Id.* He is scheduled to depart on a flight leaving from Alexandria, Louisiana. *Id.* The government also filed a notice indicating that, on November 6, 2026, Mr. Simaj Rodriguez filed a *pro se* petition for a writ of habeas corpus in the Eastern District of California. *See* Dkt. No. 20. On November 12, 2026, Mr. Simaj Rodriguez moved to voluntarily dismiss the second action. *See* Dkt. No. 21.[1]

[1] Because Mr. Simaj Rodriguez has moved for voluntary dismissal in his second petition for a writ of habeas corpus, the Court need not address the effect of that petition on this proceeding.

## ANALYSIS

### I. The Court has jurisdiction to adjudicate Mr. Paau Cho's petition.

As an initial matter, the government argues that that because Mr. Paau Cho is subject to a final order of removal, the Court cannot adjudicate his petition. The government cites 8 U.S.C. § 1252(g), which provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." Although it is true that the Court lacks jurisdiction to hear claims that would interfere the government's efforts to execute a final order of removal, "[s]ection 1252(g) is … narrow." *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 19 (2020). The Supreme Court has "previously rejected as 'implausible' the Government's suggestion that § 1252(g) covers 'all claims arising from deportation proceedings' or imposes 'a general jurisdictional limitation.'" *Id.* (quoting *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999)). "The provision applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Ibarra-Perez v. United States*, 154 F.4th 989, 996 (9th Cir. 2025) (emphasis in original) (quoting *American-Arab Anti-Discrimination Comm.*, 525 U.S. at 482). Ninth Circuit precedent has long "been clear that § 1252(g) does not prohibit challenges to unlawful practices merely because they are in some fashion connected to removal orders." *Id.* at 997. Here, Mr. Paau Cho challenges only his arrest and detention, not his final order of removal, so § 1252(g) does not abrogate or otherwise alter the Court's jurisdiction over his petition for a writ of habeas corpus.

The government also contends that 8 U.S.C. § 1252(b)(9) and 8 U.S.C. § 1252(a)(5) bar the Court from exercising jurisdiction over Mr. Paau Cho's petition. But those statutes "channel judicial review over *final orders of removal* to the courts of appeals." *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016) (emphasis added). Those statutory provisions "are not jurisdiction-stripping statutes that, by their terms, foreclose *all* judicial review of agency actions." *Id.* (emphasis in original). And importantly, "claims that are independent of or collateral to the removal process do not fall within the scope of § 1252(b)(9)." *Id.* at 1032. Mr. Paau Cho's claim is

such a claim. He does not challenge his final order of removal, but instead, his arrest and detention. So neither § 1252(b)(9) nor § 1252(a)(5) foreclose this Court's jurisdiction over Mr. Paau Cho's petition.

Because no statutory provision strips the Court of jurisdiction, the Court can adjudicate Mr. Paau Cho's petition for a writ of habeas corpus. Although Mr. Paau Cho has also filed a motion to reopen removal proceedings, he has appropriately directed that challenge to an immigration judge, not this Court. *See* Exhibit A, Traverse in Response to Order to Show Cause, Dkt. No. 21. And while Mr. Paau Cho may be entitled to a stay of removal as a result of his motion to reopen, the Court, consistent with § 1252(g), cannot limit the Attorney General's ability to execute a final order of removal as to either petitioner.

**II. Mr. Paau Cho and Mr. Simaj Rodriguez are entitled to habeas relief.**

The Court must grant a writ of habeas corpus to Mr. Paau Cho and Mr. Simaj Rodriguez if they are or will be "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241; *see also Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) (concluding that federal district courts have jurisdiction to issue such relief).

Two statutes, 8 U.S.C. §§ 1225 and 1226, provide for the detention of noncitizens or "aliens" pending removal proceedings. Under § 1225, a noncitizen "who 'arrives in the United States,' or 'is present' in this country but 'has not been admitted,' is treated as 'an applicant for admission.'" *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018) (quoting 8 U.S.C. § 1225(a)(1)). Such individuals are subject to mandatory detention unless an exception applies. *See* 8 U.S.C. § 1225(b). For noncitizens like Mr. Paau Cho and Mr. Simaj Rodriguez who are "already in the country," § 1226 similarly permits detention "pending the outcome of removal proceedings." *Jennings*, 583 U.S. at 289. But unlike § 1225(b)(1) and (b)(2), § 1226 affords the government significant discretion with respect to detention. After arresting a noncitizen "[o]n a warrant issued by the Attorney General," the government "may continue to detain the arreste[e]" until a final removal decision is made or "may release" them on "bond" or "conditional parole." 8 U.S.C. § 1226(a)(1)–(2). Release is available, however, only if "the alien … demonstrate[s] to the satisfaction of [an] officer that such release would not pose a danger to property or persons, and

that the alien is likely to appear for any future proceeding." 8 C.F.R. §§ 236.1(c)(8), 1236.1(c)(8). If a noncitizen wishes to contest the initial custody determination—*i.e.*, the denial or amount of bond—he has a right to do so before an immigration judge. 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1). Immigration judges must deny bond unless "an alien … demonstrate[s], by clear and convincing evidence, that release would not pose a danger to other persons or to property" and "that the alien is likely to appear for any scheduled proceeding or interview." 8 C.F.R. § 1003.19(h)(3).

A noncitizen for whom a final order of removal has issued is subject to a different set of rules. During the first 90 days after issuance of the order, the Attorney General "shall" detain the noncitizen. 8 U.S.C. § 1231(a)(2)(A). Following that period, the noncitizen is subject to supervision rather than detention unless the Attorney General determines that the noncitizen is "a risk to the community or unlikely to comply with the order of removal." 8 U.S.C. §§ 1231(a)(3), (a)(6).[2]

Crucially, the statutory framework governing detention is premised on arrests made "[o]n a warrant issued by the Attorney General." The petitioners here were not arrested pursuant to such a warrant. By statute, however, an ICE agent may make a warrantless arrest if (1) he believes someone is in the United States illegally and (2) the noncitizen is likely to escape before a warrant can be obtained for his arrest. *Tejeda-Mata v. Immigr. & Naturalization Serv.*, 626 F.2d 721, 725 (9th Cir. 1980); 8 U.S.C. § 1357(a)(2) ("Any officer or employee of the Service authorized under regulations prescribed by the Attorney General shall have power without warrant … to arrest any alien in the United States[] if he has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest."). These requirements are analogous to the Fourth Amendment's probable cause requirement. *Tejeda-Mata*, 626 F.2d at 725. Agency regulations echo these statutory requirements. *See* 8 C.F.R. § 287.8(c)(2)(i) ("An arrest shall be made only when the designated immigration officer has reason to believe that the person to be arrested has committed an offense

---

[2] It is undisputed that Mr. Paau Cho's final order of removal was issued more than 90 days ago. *See, e.g.*, Exhibits 1, Respondents' Initial Response to Habeas Petition Regarding Rudy Alexander Paau Cho, Dkt. No. 2 (indicating that the final order of removal was entered on August 1, 2019).

against the United States or is an alien illegally in the United States."); 8 C.F.R. § 287.8(c)(2)(ii) ("A warrant of arrest shall be obtained except when the designated immigration officer has reason to believe that the person is likely to escape before a warrant can be obtained.").

Mr. Paau Cho and Mr. Simaj Rodriguez contend that their ongoing detention is unlawful because their arrests violated the statutes and regulations governing warrantless arrests of suspected noncitizens, the Fourth Amendment, and the Due Process Clause of the Fifth Amendment. The government contends, however, that the mere fact that their arrests were unlawful does not provide a valid basis for habeas relief.[3] It is true that "[t]he remedy for an unlawful arrest in violation of the Fourth Amendment is [generally] suppression of evidence, not release from custody." *Reyes v. Hermosilla*, No. C25-2525-JNW-MLP, 2026 WL 528692, at *2 (W.D. Wash. Jan. 15, 2026), *report and recommendation adopted*, No. C25-2525-JNW, 2026 WL 525103 (W.D. Wash. Feb. 25, 2026). That does not end the inquiry, however. If the unlawfulness of the arrests resulted in petitioners' loss of protected liberty interests without the procedural due process to which they were entitled under the Fifth Amendment, then petitioners' ongoing detention—*i.e.*, their ongoing deprivation of liberty—violates the Constitution, and petitioners are entitled to habeas relief. For the reasons explained herein, the immigration officers' failure to comply with the statutory framework governing warrantless arrests deprived petitioners of the pre-detention procedural protections Congress has established to ensure that such arrests have a valid basis. Because those protections are necessary to comply with the procedural due process requirements of the Fifth Amendment, petitioners' ongoing detention violates the Due Process Clause.

**A. Petitioners' arrests infringed upon substantial protected liberty interests.**

"Courts analyze procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the

---

[3] With respect to Mr. Paau Cho, the government argues only that the Court lacks jurisdiction over his petition for a writ of habeas corpus. Because the Court concludes that it has jurisdiction over that petition, the Court construes government's merits arguments regarding Mr. Simaj Rodriguez's claim as applying to Mr. Paau Cho as well.

procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025); *see also Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989) (explaining the two-step inquiry for procedural due process claims). With respect to the first step, it is clear that petitioners' arrests infringed upon their protected liberty interests in remaining free from government detention.

The Due Process Clause protects all persons in the United States, including noncitizens, from deprivations "of life, liberty, or property" by the federal government "without due process of law[.]" U.S. Const. amend. V; *see also Zadvydas*, 533 U.S. at 690. The Supreme Court has recognized that "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690. Once a noncitizen "enters the country, … the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693. Indeed, the Supreme Court has long recognized that after a noncitizen "gains admission to our country and begins to develop the ties that go with permanent residence[,] his constitutional status changes" and he "has a right to due process." *Landon v. Plasencia*, 459 U.S. 21, 32–33 (1982); *see also Yamataya v. Fisher*, 189 U.S. 86, 100–01 (1903) (distinguishing noncitizens entitled to due process from those "who ha[ve] been here for too brief a period to have become, in any real sense, a part of our population"). Put another way, "[noncitizens] who have established connections in this country have due process rights in deportation proceedings[.]" *Thuraissigiam*, 591 U.S. at 107.

Mr. Paau Cho and Mr. Simaj Rodriguez have certainly "established connections in this country," *id.*, sufficient to make them "a part of our population," *Yamataya*, 189 U.S. at 101. Mr. Paau Cho and Mr. Simaj Rodriguez both entered the country as children—nine and seven years ago, respectively. They have built lives in this country, and they both contribute productively to their communities through their work at Groland Landscape in Hayward, California. They have "develop[ed] ties," *Landon*, 459 U.S. at 32, and have spent many years building connections to this country. Both Mr. Paau Cho and Mr. Simaj Rodriguez are therefore entitled to due process

under the Fifth Amendment. Their protected liberty interest in remaining out of immigration custody could therefore be taken away only if the government's procedure for doing so complied with the requirements of the Due Process Clause.

**B. The *Mathews* factors all favor petitioners.**

Because Mr. Paau Cho and Mr. Simaj Rodriguez's arrests infringed upon their protected liberty interests, the Court must determine whether they were entitled to additional process—such as the issuance of a warrant or compliance with the statutory requirements governing warrantless arrests set forth in 8 U.S.C. § 1357(a)(2)—prior to being detained. *Mathews v. Eldridge*, 424 U.S. 319 (1976), identifies three factors that must be balanced in determining what procedures due process requires with respect to the deprivation of a protected interest:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335. Each of these three factors supports the conclusion that Mr. Paau Cho and Mr. Simaj Rodriguez were entitled, at minimum, to the pre-arrest statutory process Congress has afforded to such noncitizens.

**1. Petitioners' private interests**

As explained above, Mr. Paau Cho and Mr. Simaj Rodriguez have substantial interests in remaining out of custody. Indeed, their interest in remaining free "from government custody, detention, or other forms of physical restraint [] lie[] at the heart of the liberty" protected by the Fifth Amendment. *Zadvydas*, 533 U.S. at 690. The Court must be "careful not to 'minimize the importance and fundamental nature' of the individual's right to liberty." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (quoting *United States v. Salerno*, 481 U.S. 739, 750 (1987)). Mr. Paau Cho and Mr. Simaj Rodriguez have lived free in the United States for many years, and they have substantial interests in remaining in their homes and continuing their employment. *See Garro Pinchi v. Noem*, 792 F. Supp. 3d 1025 (N.D. Cal. 2025) (holding that a petitioner had "an interest in remaining in her home, continuing her employment, providing for her family, obtaining

necessary medical care, maintaining her relationships in the community, and continuing to attend her church”).

It is not disputed that Mr. Paau Cho and Mr. Simaj Rodriguez have lived for many years in the United States largely without incident. *Chiguil Chiguil v. Noem*, No. 1:26-CV-1844 DAD CSK, 2026 WL 913195, at *5 (E.D. Cal. Apr. 3, 2026), *report and recommendation adopted sub nom. Chiguil v. Noem*, No. 1:26-CV-01844-DAD-CSK (HC), 2026 WL 983134 (E.D. Cal. Apr. 13, 2026) (noting that “[t]he duration of petitioner’s freedom prior to his detention elevates and underscores his interest in liberty”). Mr. Paau Cho has no criminal history. Exhibit 1, Petition for Writ of Habeas Corpus, Dkt. No. 1, at 2. And although Mr. Simaj Rodriguez was convicted of a DUI, there is no indication that he has not complied with the conditions of his probation, Exhibit 2, Petition for Writ of Habeas Corpus, Dkt. No. 1, at 2, and the government does not make any arguments to suggest that his prior DUI affects the Court’s analysis. *See also Llanes Tellez v. Bondi*, 826 F. Supp. 3d 1141, 1153–54 (N.D. Cal. 2025), *appeal dismissed*, No. 26-1003, 2026 WL 2445624 (9th Cir. June 17, 2026) (concluding that a petitioner with a past DUI posed no threat to the community). There is no indication that either petitioner poses a flight risk or a danger to the community. The record suggests the opposite: Mr. Simaj Rodriguez was driving at the time he was encountered by ICE but he pulled over and both he and Mr. Paau Cho complied with the ICE agents’ commands. Accordingly, Mr. Paau Cho and Mr. Simaj Rodriguez’s private interest in retaining their liberty is significant.

**2. The risk of erroneous deprivation and value of additional safeguards**

In civil immigration proceedings, the government may generally detain people for only two reasons: to prevent flight prior to removal or to protect against a danger to the community. *See Zadvydas*, 533 U.S. at 690. In evaluating what procedures due process requires in connection with Mr. Paau Cho and Mr. Simaj Rodriguez’s detention, then, the question under the second *Mathews* factor is whether there is a significant risk that they were detained without a valid purpose and whether additional safeguards would help prevent such an erroneous deprivation of their liberty.

As noted above, Mr. Paau Cho and Mr. Simaj Rodriguez were detained not only without a pre-deprivation bond hearing but also without valid warrants supporting their arrest. Although

Congress has deemed such arrests permissible under certain circumstances, it has required that officers making such arrests find probable cause to believe the person is in the country unlawfully and determine that the person may pose a flight risk or threat to the public before detaining him or her. The value of this procedural protection is obvious. Where no determination that these circumstances are present has been made, "the risk of an erroneous deprivation of liberty is high." *Singh v. Andrews*, 803 F.Supp.3d 1035, 1047 (E.D. Cal. July 11, 2025) (citation modified). That is because "neither [p]etitioner nor [r]espondents had an opportunity to determine whether any valid basis exists for [his] detention." *Oliveros v. Kaiser*, No. 25-cv-07117-BLF, 2025 WL 2677125, at *7 (N.D. Cal. Sept. 18, 2025).

Where an ICE agent follows the provisions set forth in § 1357(a)(2), the agent's pre-deprivation determinations may be sufficient to satisfy procedural due process. But where an ICE agent does not follow the provisions of the statute, he has not provided *any* pre-deprivation process and the risk of erroneous deprivation is substantially higher. The statutory scheme governing warrantless immigration arrests thus defines the bare minimum process that is constitutionally mandated prior to an immigrant's warrantless deprivation of liberty. *Cf. Martinez v. McAleenan*, 385 F. Supp. 3d 349, 363 (S.D.N.Y. 2019) ("Thus, the key to the constitutionality of a grave deprivation, of course, is that before the Government unilaterally takes away that which is sacred, it must provide *meaningful* process—as what the Constitution protects is 'due process' not the right to a 'hearing.'" (emphasis in original)). If the core requirements of the statute are not followed, however, the ongoing detention pursuant to an arrest undertaken without any procedural protections likely violates the Fifth Amendment's guarantee of procedural due process. *See, e.g.*, *Maza v. Nessinger*, No. 1:26-CV-00577-MSM-AEM, 2026 WL 2530099, at *1 (D.R.I. Aug. 27, 2026) (concluding that where ICE had detained someone based on a reinstated a prior order of removal that contained no signature, "ICE's failure to follow its own regulations, and the resulting violation of the [p]etitioner's due process rights, render[ed] its action invalid"). Here, the evidence before the Court demonstrates that the ICE agents who arrested Mr. Paau Cho and Mr. Simaj Rodriguez did not comply with the statutory requirements governing warrantless arrests pursuant to § 1357(a)(2).

United States District Court
Northern District of California

The record indicates that ICE agents had reason to believe that Mr. Paau Cho was in the United States unlawfully. Both Mr. Paau Cho and Mr. Simaj Rodriguez gave the ICE agent their Guatemalan identification and, while that fact alone might not be sufficient, the ICE agents then searched their agency records and determined that Mr. Paau Cho was subject to a final order of removal. The final order of removal would have indicated to the agents that Mr. Paau Cho was present in the United States unlawfully. The record does not suggest, however, that ICE agents had an adequate basis for concluding that Mr. Simaj Rodriguez was in the country unlawfully. To the contrary, the record indicates that ICE agents did not even inquire about his immigration status until he arrived at 630 Sansome following his roadside detention and arrest.

That leaves the issue of whether the ICE agents made any effort to determine whether Mr. Paau Cho and Mr. Simaj Rodriguez were likely to escape. As noted above, "[t]he phrase 'has reason to believe' has been equated with the constitutional requirement of probable cause." *Tejeda-Mata*, 626 F.2d at 725. "[T]he probable cause inquiry must be 'particularized with respect to that person,'" *Vasquez Perdomo v. Mullin*, No. 2:25-CV-05605-MEMF-SP, 2026 WL 2751388, at *18 (C.D. Cal. Sept. 2, 2026) (quoting *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979)), and "[w]hether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer *at the time of the arrest*," *id.* (alteration in original) (emphasis added) (quoting *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004)). The government has offered no evidence suggesting that the ICE agents conducted an assessment to determine whether either petitioner was likely to escape before warrants could be obtained for their arrest. The government attempts to offer post-hoc rationalizations for why the ICE agents *might* have believed Mr. Paau Cho and Mr. Simaj Rodriguez were likely to escape but offers no evidence of what the ICE agents *actually* believed at the time of the arrests—or that they even attempted to make such a determination at that time. Because the inquiry must be both particularized and made prior to a noncitizen's warrantless arrest, the government has failed to demonstrate that the ICE agents who arrested and detained Mr. Paau Cho and Mr. Simaj Rodriguez had reason to believe—*i.e.*, found probable cause to believe—that they were likely to flee before a warrant could be obtained.

In short, the ICE agents who arrested petitioners failed to comply with § 1357(a)(2).

Because they did not provide petitioners with the procedural protections afforded by that statute, the risk of erroneous deprivation was high and there was a significant risk that the deprivation of petitioners' liberty was unjustified. Providing Mr. Paau Cho and Mr. Simaj Rodriguez with the bare minimum procedural safeguards mandated by Congress would have had significant value in helping ensure that their detention had a lawful basis. The second *Mathews* factor thus strongly weighs in petitioners' favor.

**3. The government's countervailing interest**

The government's countervailing interest in detaining Mr. Paau Cho and Mr. Simaj Rodriguez without either procuring a warrant or complying with the requirements governing warrantless arrests is minimal. The government may have "a strong interest" in detaining noncitizens during the pendency of removal proceedings as needed to "protect[] the public from dangerous criminal aliens," or to prevent flight and thereby "increase the chance that … the aliens will be successfully removed." *Rodriguez Diaz*, 53 F.4th at 1208 (quoting *Demore v. Kim*, 538 U.S. 510, 515 (2003)). But the government has not shown that either Mr. Paau Cho or Mr. Simaj Rodriguez poses a flight risk or a danger to the community. And while the government may in some circumstances have an interest in making a warrantless arrest if the statutory requirements for such an arrest are satisfied, the record evidence in this case does not establish that those circumstances were present at the time of petitioners' arrest or that the officers even attempted to make such a determination.

Finally, the costs associated with complying with the statutory requirements for immigration arrests would have likely been nominal. *See, e.g.*, *Singh*, 803 F.Supp.3d at 1048 (E.D. Cal. 2025) (noting the costs of providing process for "routine" occurrences such as custody hearings "impose a minimal cost" (internal quotation marks omitted)). Indeed, Congress has specifically required the government to bear such costs in connection with any warrantless arrest. Accordingly, he third *Mathews* factor therefore also strongly weighs in Mr. Paau Cho's and Mr. Simaj Rodriguez's favor.

* * *

In short, all three *Mathews* factors favor Mr. Paau Cho and Mr. Simaj Rodriguez. Considering the substantial private interest at stake, the risk of erroneous deprivation through the procedures used (or, as relevant here, *not* used), and the government's minimal interests in not complying with the statutory requirements for warrantless arrests, the Due Process Clause at the very least required the government to provide Mr. Paau Cho and Mr. Simaj Rodriguez with the statutorily mandated process before they were detained and deprived of their liberty. Because they were not provided with that process, the ongoing deprivation of their liberty violates the Due Process Clause of the Fifth Amendment. A writ of habeas corpus requiring their immediate release must therefore issue.

## CONCLUSION

For the foregoing reasons, the Court grants Mr. Paau Cho and Mr. Simaj Rodriguez's petition for writ of habeas corpus.[4] Defendants are ordered to immediately release Mr. Paau Cho and Mr. Simaj Rodriguez from detention. Consistent with 8 U.S.C. § 1252(g), this order does not limit the Attorney General's ability to execute any final order of removal as to either petitioner.

**IT IS SO ORDERED.**

Dated: November 15, 2026



P. Casey Pitts
United States District Judge

[4] Because the government's detention of Mr. Paau Cho and Mr. Simaj Rodriguez in violation of their procedural due process rights is dispositive, the Court need not address their other arguments. They may of course raise those theories in a future habeas petition or by seeking to reopen this proceeding.